liWALTZER, Judge.
This is an appeal from a judgment of the district court finding that LSA-R.S. 9:2948 is constitutional. From that judgment, the Orleans Parish Assessor for the Third District appeals.
On January 31, 1992, Linda Dolese wife offand Walter Strata, Jr. (called “Seller” in the contract) entered into a bond for deed contract with Sharon Gipson wife offand Eddie Dean Hilliard (called “Purchaser” in the contract) for the real estate located at 8007 *523 Sandy Cove Drive in New Orleans. The contract provided in part:
... this Contract is a “Bond for Deed” with each other to the effect that Seller will sell and Purchaser will purchase the immovable property as hereinafter described with any and all improvements situated thereon.
IT IS CLEARLY UNDERSTOOD AND AGREED THAT THIS DOCUMENT IS NOT A SALE, TRANSFER OR CONVEYANCE BUT ONLY A WRITTEN AGREEMENT TO SELL, TRANSFER AND CONVEY THE HEREIN DESCRIBED PROPERTY IN THE FUTURE, PROVIDED ALL OF THE TERMS, CONDITIONS, PAYMENTS AND OBLIGATIONS SET FORTH HEREIN ARE FULLY, COMPLETELY AND TIMELY MET BY PURCHASER.
TERMS OF SALE: ... the said sale is to be executed by the said Seller in favor of the said Purchaser in the standard form for a Louisiana cash sale with full warranty of title ...
PROPERTY: If, and only if, Purchaser makes all payments prescribed herein and promptly pays all taxes, assessments and 'insurance as set forth hereinafter, Seller will at that time execute a sufficient warranty deed, selling and conveying unto Purchaser the following described real estate ...
TAXES: All taxes against the herein described .property from the year 1991, up to and including the year 1992, have been paid. Taxes for the year 1992, have been prorated through the date hereof. All property taxes, any state, local or other assessments, from the date of this Act and thereafter shall be the responsibility of Purchaser, and will be promptly paid by Purchaser when due, prior to the time the same become delinquent ...
COMPLIANCE: Each party agrees to comply with the reasonable requirements of the mortgagee described herein, and the taxing and police authorities having dominion over the property ... (Underlines added).
The Hilliards applied for a homestead exemption alleging continuous occupancy. The Assessor for the Third District of New Orleans denied them a homestead exemption and the Hilliards along with the Stratas filed the instant petition seeking a mandamus ordering the |2Assessor to grant them the exemption. The assessor answered and further requested a declaratory judgment finding LSA-R.S. 9:2948 unconstitutional. LSA-R.S. 9:2948 states:
Notwithstanding any other provisions of law to the contrary, the buyer under a bond for deed contract shall be deemed, for purposes of the homestead exemption only, to own any immovable property he has purchased and is occupying under bond for deed, and may be eligible for the homestead exemption provided in Article VII, Section 20(A) of the Constitution of Louisiana if otherwise qualified. The buyer under a bond for deed contract shall apply for the homestead exemption each year.
The trial court granted judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that mover’s Writ of Mandamus is hereby granted.
The trial court further provided the following written reasons for judgment:
This matter came before the Court by memoranda on a Writ of Mandamus.
The Writ of Mandamus is hereby granted.
This suit arises out of a claim for homestead exemption on a Bond for Deed contract. On January 31, 1992, petitioners entered into a Bond for Deed contract for the acquisition of property located in the Parish of Orleans, Lot 116, Square C. Third District, City of New Orleans, Lake-shore East, bounded by Sandy Cove Drive, Hayne Boulevard, Pass Drive and Gannon Road. The property bears the municipal number 8007 Sandy Cove Drive.
Petitioners, Sharon and Eddie Hilliard, applied for a homestead exemption at the office of defendant, Assessor Errol Williams, in the Parish of Orleans, but were denied the homestead exemption from Ad Valorem real estate property taxes. On October 28,1993 petitioners filed a *524 petition for Writ of Mandamus to direct the defendant Errol Williams to grant them a homestead exemption.
This Court grants petitioner’s Writ of Mandamus pursuant to La.(sic) R.S.Art.(sic) 9:2948 which provides: (quote omitted).
Defendant, Errol Williams argues that La.R.S.Art. 9:2948 is unconstitutional because the statute attempts to amend the constitution legislatively. Defendant asserts that exemptions from ad valorem taxes must be provided for constitutionally under Article VII Section 21 and Article VII Section 20(B) of the Louisiana Constitution of 1974. Attorney General Richard Ieyoub submitted a memorandum of law to this Court on this issue of the constitutionality of La.(sic) R.S.Art.(sic) 9:2948.
The Attorney General’s opinion stated that La.(sic) R.S.Art.(sie) 9:2948 is subject to constitutional challenge. However, all statutes are presumed constitutional. The Attorney General cited Polk v. Edwards, (citation omitted) where the Court reasoned (sic)[1]
An elementary principle of statutory constructin (sic) in constitutional law holds that all statutory enactments are presumed to be constitutional. Interstate Oil Pipe Line Co. v. L3Guilbeau, (citations omitted); State on behalf of J.AV., (citations omitted). Unless the fundamental rights or privileges and immunities of a person are involved, a strong presumption exists that the legislature in adopting legislation has acted within its constitutional authority. Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, etc., (citation omitted). This presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to public finance.
La. (sic) R.S.Art. 9:2948 was enacted to further the state’s interest in fostering the public’s ability to acquire adequate housing and to promote the public policy of providing individuals who could not otherwise do so with a means of acquiring homes.[2] The effect of La. (sic) R.S.Art. 9:2948 is to place bond for deed purchasers with respect to the homestead exemption, in a position equal to that of purchasers who can pay cash or qualify for mortgages to finance home acquisitions.
Additionally, the legislature has the power to amend and re-enact codal and statutory provisions regarding ownership. This Court views the enactment of La. (sic) R.S.Art. 9:2948 as an exercise of the legislature’s plenary power to define ownership.[3]
Therefore, this Court is of the opinion that petitioner’s Writ of Mandamus should be granted.

DISCUSSION:

Article 7 Section 15 of the Constitution of 1974 provides:
The legislature shall have no power to release, extinguish, or authorize the releasing or extinguishing of any indebtedness, liability, or obligation of a corporation or individual to the state, a parish, or a municipality.
Article 7 Section 18 creates ad valorem taxes and Article 7 Section 20(A) creates an exception to the general plan of ad valorem taxation by creating the homestead exemption as follows:
The bona fide homestead, consisting of a tract of land or two or more tracts of land *525 with a residence on one tract and a field, pasture, or garden on the other tract or tracts, not exceeding one hundred sixty acres, buildings and appurtenances, whether rural or urban, owned and occupied by any person, shall be exempt from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred dollars of the assessed valuation.
In Polk v. Edwards, 626 So.2d 1128, 1132 (La.1993), the Supreme Court stated the standards and guidelines for determining constitutionality:
|[1] An elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutional. Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950); State on behalf of J.A.V., 558 So.2d 214 (La.1990). Unless the fundamental rights or privileges and immunities of a person are involved, a strong presumption exists that the legislature in adopting legislation has acted within its constitutional authority. Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, etc., 529 So.2d 384 (La.1988). This presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to public finance. Id. at 387; See United States v. Jacobs, 306 U.S. 363, 369-70, 59 S.Ct. 551, 555, 83 L.Ed. 763, 768, mot. den., 306 U.S. 620, 59 S.Ct. 640, 83 L.Ed. 1026 (1939) (“the presumption that an Act of Congress is valid applies with added force and weight to a levy of public revenue”).
[2] The Louisiana Legislature, elected by the state’s citizenry, may enact any legislation that the state constitution does not explicitly prohibit. Thus, in order to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature. In re American Waste & Pollution Control Co., 588 So.2d 367 (La.1991); Louisiana Recovery District, 529 So.2d 384.
[3] This structure is unlike the federal union of the states and the federal constitution whose provisions are grants of powers. The powers of the United States Congress are specifically delineated in the United States Constitution. Conversely, the Louisiana Legislature, as with the legislatures of the other states of the Union, has all powers which have not been denied it by the state constitution. In re American Waste & Pollution Control Co., 588 So.2d 367 (La.1991); Swift v. State, 342 So.2d 191,194 (La.1977). The legislature’s powers are derived from the citizens of the state who freely elect their legislative representatives. Alternatively stated, the provisions of the Louisiana Constitution serve as limitations on the otherwise plenary power exercised by the legislature, which may enact any legislation not prohibited by the Constitution. State Bond Comm’n of the State of Louisiana v. All Taxpayers, Property Owners & Citizens, 525 So.2d 521 (La.1988). The party challenging the constitutionality of a statute bears the burden of proving clearly that the legislation is invalid or unconstitutional. Specifically, the party must rely upon a constitutional provision which restricts the power of the legislature to enact the particular legislation and must establish that the legislation is barred by such provision. In re American Waste, 588 So.2d at 373; State Bond Comm’n, 525 So.2d at 525. Any doubt as to the legislation’s constitutionality must be resolved in favor of constitutionality. Louisiana Recovery District, 529 So.2d 384. Accordingly, in an attack upon a legislative act as falling within an exception to the legislature’s otherwise plenary power, an opponent must establish more than that the constitutionality of the legislation is fairly debatable. The opponent must establish clearly and convincingly that the constitutional aim was to deny to the legislature the power to enact the legislation. Id. at 388. (Emphasis added).
It is clear by its express language that the constitutional aim of Article 7 Section 15 was to deny the legislature the power:
to release, extinguish, or authorize the releasing or extinguishing of any indebtedness, liability, or obligation of a corporar *526 tion or individual to the state, a parish, or a municipality.
| sWe note that none of the parties, nor the trial court ever referred to Article 7 Section 15. Apparently, they were unaware of its existence. Accordingly, the trial court did not consider this constitutional prohibition in its deliberations, reasons and judgment.
Civil Code Article 1757 provides that: “(o)bligations ... also arise directly from the law”.
The obligation to pay ad valorem taxes arises directly from the law, specifically from Article 7 Section 18 which creates an obligation to pay ad valorem taxes to the state. Because the legislature is specifically denied the power to release any obligation owed to the state, LSA-R.S. 9:2948 would be unconstitutional unless specifically authorized by some other provision of the Constitution.
In the instant case, the obligation to pay ad valorem taxes under Article 7 Section 18 rests upon the Stratas as owners of this property. It is only the contractual provisions in the bond for deed contract that shift that burden upon the Hilliards. It is apparent from the express language of the contract that at the time of the execution of the contract, all parties fully expected that property taxes would be owed and that the Stra-tas contractually assumed that obligation.
Because the obligation under Article 7 Section 18 is one owed by the Stratas who are individuals, LSA-R.S. 9:2948 thus “extinguishes) (an) obligation of (the) individuals, (the Stratas) to the state.” Thus it does not matter whether the bond for deed contract purchasers the Hilliards can be characterized as a residential lessee under Article 7 |aSec. 20(B),[4] because it is the extinguishment of the obligation of the Stratas that is unconstitutional.
Although none of the litigants or the trial judge so noted, the bond for deed contract was executed on January 31,1992. The statute at issue was added by Act No. 1030 of 1993, and became effective on August 15, 1993, thus for a period of a year and eight and a half months, legislation providing for a bond for deed exception did not even exist. Thus placing the contractual provision into effect, the Hilliards would be responsible for the payment of property taxes on that year and eight and a half months.
Having found LSA-R.S. 9:2948 unconstitutional and in violation of Article 7 Section 15, we find that the property taxes would be owed by the sellers, the Stratas, however under the bond for deed contract the Hilliards have voluntarily assumed that obligation, hence the property taxes are owed by the Hilliards.
For the reasons discussed, the judgment of the district court granting the writ of mandamus is reversed and we render declaratory judgment finding LSA-R.S. 9:2948 unconstitutional.

REVERSED AND RENDERED.

.The trial court states in its reasons for judgment that all statutes are presumed to be constitutional. It is correct that all statutes are presumed to be constitutional until they have been judicially challenged and judicially found to be unconstitutional. A court ruling on the judicially raised issue of whether a statute is constitutional cannot use as its reasoning that the statute is constitutional because it is presumed to be constitutional.

. We note that both LSA-R.S. 9:2948 and Article 7 Section 18 were enacted to meet public purposes. Is the public purpose of one statute a more valid public purpose than another contradictory public purpose?

. LSA-C.C. art. 477 defines ownership. Act 1033 of 1994 did not seek to amend C.C. art. 477 in order to add bond for deed as a method of ownership. If it had, then the trial court’s reasoning would hold. Rather Act 1033 of 1994 created a new statute.

. As further evidence of the fact that the legislature cannot by mere statute amend the constitution to create new homestead exemptions is the enabling provision of Article 7 Section 20(B) which provides:
Notwithstanding any contrary provision in this constitution, the legislature may provide for tax relief to residential lessees in the form of credits or rebates in order to provide equitable tax relief similar to that granted to homeowners through homestead exemptions.
If it were within the unrestricted power of the legislature to add homestead exemptions by ordinary statute instead of by constitutional amendment, then this grant of power to the legislature would be unnecessary. This grant of power is necessary because of Article 7 Section 15 which restricts that power of the legislature.
We further note that LSA-R.S. 9:2948 fails to meet the grant of power conferred under Article 7 Section 20(B) because it does not provide for "tax relief ... in the form of credits or rebates
In short, where the constitution prohibits the legislature, the legislature may not amend the constitution by mere statute, but only constitutional amendment submitted to the voters as per LSA-Const. Art. 13.