# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-297

**HONORABLE WILFORD D. CARTER**

**VERSUS**

**H. LYNN JONES, II, CLERK OF COURT, ET AL.**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-195
HONORABLE ANNE LENNAN SIMON, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

**Pickett, J., concurs in the judgment and assigns reasons.**

**Genovese, J., dissents and assigns written reasons.**

**AFFIRMED.**

**Rudie Ray Soileau, Jr.**
**Attorney at Law**
**P. O. Box 721**
**Lake Charles, LA 70602**
**(337) 433-0110**
**Counsel for Plaintiff/Appellant:**
**Honorable Wilford D. Carter**

**David Frank Dwight**
**Stephen C. Dwight**
**Dwight Law Firm**
**1400 Ryan St.**
**Lake Charles, LA 70601**
**(337) 439-3138**
**Counsel for Defendant/Appellee:**
**H. Lynn Jones, II, Clerk of Court**

**Rick J.  Norman**
**Norman Business Law Center**
**145 East Street**
**Lake Charles, LA 70601**
**(337) 436-7787**
**Counsel for Defendant/Appellee:**
**Division I**

**John B. Scofield**
**Robert E. Landry**
**Scofield, Gerard, Singletary & Pohorelsky**
**P. O. Box 3028**
**Lake Charles, LA 70602**
**(337) 433-9436**
**Counsel for Defendants/Appellees:**
**Honorable R. Richard Bryant, Jr.**
**Honorable David Alexander Ritchie**
**Honorable Guy Ernest Bradberry**
**Honorable Robert Lane Wyatt**
**Honorable David Kent Savoie**
**Honorable G. Michael Canaday**

**Allen J. Mitchell, II**

**Mitchell & Blanco**

**One Lakeshore Dr., Suite 1135**

**Lake Charles, LA 70629**

**(337) 436-8686**

**Counsel for Defendant/Appellee:**

**Honorable Alcide Joseph Gray**

**SAUNDERS, Judge.**

This is a case challenging the constitutionality of La.R.S. 13:587. The plaintiff, a sitting judge of the Fourteenth Judicial District Court (hereinafter "the District Court") in Calcasieu Parish, challenged the statute in a suit against the clerk of court and the remaining eight judges of that district. After a trial on the merits, Judge *Ad Hoc* Anne L. Simon (hereinafter "Judge Simon") found for the defendants. The plaintiff appealed to this court, charging three assignments of error. For the reasons set forth below, we affirm the trial court's decision in full.

**FACTS:**

Pursuant to La.R.S. 13:587, the judges of the District Court in Calcasieu Parish voted unanimously in 1999 to enact Local Rule 23, which designated two of the court's nine divisions, "C" and "I", as Family and Juvenile divisions. In January 2006, Judge Wilford D. Carter (hereinafter "Judge Carter"), duly elected judge for Division "F" of the District Court, sought to alter this arrangement by exercising original jurisdiction in his division over a pro rata share of family and juvenile cases filed in the district. To this end, Judge Carter issued on January 10, 2006, an Order directing the Clerk of Court, Mr. H. Lynn Jones (hereinafter "Clerk Jones"), to assign one-ninth of all subsequently filed family and juvenile cases to Division "F". Seven of the remaining eight judges disagreed with Judge Carter's Order, and they promptly issued on January 12, 2006, an Order of their own forbidding such case reassignments.

**PROCEDURAL HISTORY:**

Judge Carter applied to this court for writs of certiorari, asserting that the issuance of the seven judges' countermanding Order was an invasion of our appellate

court jurisdiction. We denied the writ application on March 3, 2006, on grounds that we lacked supervisory jurisdiction over the matter presented. Contemporaneous to such writ application, Judge Carter brought suit in the District Court on January 12, 2006, initially asserting a mandamus action against Clerk Jones for failing to adhere to Judge Carter's Order of January 10, 2006. On July 5, 2006, Judge Carter converted his petition to an ordinary proceeding, joined as parties respondent the remaining eight judges of the District Court, and directly challenged the constitutionality of La.R.S. 13:587 and Local Rule 23.

Judge Carter's claims were considered by Judge Simon at a trial on the merits on December 7, 2006. Judge Simon filed a formal judgment on January 8, 2007, denying all relief sought by Judge Carter's petition. Judge Carter timely perfected a devolutive appeal of Judge Simon's judgment, which appeal was filed in the record on January 18, 2007.

**ASSIGNMENTS OF ERROR:**

1. Did the lower court commit legal error in finding that La.R.S. 13:587 is not an unconstitutional delegation of the legislature's exclusive authority to establish courts of limited jurisdiction?

2. Did the lower court commit legal error in finding that La.R.S. 13:587 and Local Rule 23 do not unconstitutionally restrict Judge Carter's exercise of general jurisdiction?

3. Did the lower court commit legal error in finding that La.R.S. 13:587 does not violate the La.Const. art. 3, § 12(A) prohibition against local and special laws?

**ASSIGNMENT OF ERROR #1:**

2

Judge Carter argues that the lower court erred in finding that the enactment of La.R.S. 13:587 did not constitute an unconstitutional delegation of the legislature's exclusive authority to establish courts of limited jurisdiction. Specifically, Judge Carter contends that in imbuing the District Court with the power to assign family and juvenile cases to specified divisions within the court, La.R.S. 13:587 gives the District Court the authority to transform itself, either in whole or in part, from a court of general jurisdiction to one of limited jurisdiction. We disagree.

Louisiana Constitution Article 5, § 16(A) provides that district courts have jurisdiction over all civil matters. As a rule, a district court is considered to have general jurisdiction unless specifically denied it. *Tomas v. Conco Food Distributors*, 95-348 (La.App. 3 Cir. 10/25/95), 666 So.2d 327. The authority to effect such denial lies solely within the purview of the legislature: "The legislature by law may establish courts of limited jurisdiction with parishwide territorial jurisdiction . . . ." Louisiana Constitution Article 5, § 15(A). Further, as with all powers that fall within the exclusive purview of a particular branch of government, the exercise of such power by another branch is unconstitutional: "[N]o one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." *Id.* at La.Const. art. 2, § 2. Thus, if La.R.S. 13:587 truly empowers the District Court to create courts of limited jurisdiction by assigning family and juvenile cases to specific divisions within the court, the statute must be an unconstitutional delegation of legislative power to the judicial branch.

By way of counterargument, the appellees contend that La.R.S. 13:587 does not represent a constitutionally impermissible delegation of the legislature's authority to create courts of limited jurisdiction, in that the statute contemplates the creation of

3

no courts at all. In support of such contention, the appellees cite *Piper v. Olinde Hardware and Supply Co., Inc.*, 288 So.2d 626 (La.1974). There, the supreme court was asked to interpret the proper application of La.Code Civ.P. art. 2006, which directs that an action to annul a judgment must be brought "in the trial court." At issue specifically was the question of whether the statutory language pertaining to "the trial court" necessitated that such a suit be brought before the same division of the trial court as that which originally rendered the judgment. In holding that an annulment action may be brought before any division of the district court, the *Piper* court distinguished, for purposes of statutory interpretation, the relationship between the terms "court" and "division": "The clear implication from the applicable provisions currently in force is that each judicial district constitutes a single court, and the creation [of] different divisions does not operate to sever a single district court into multiple courts." *Piper*, 288 So.2d at 629 (citing *Block v. Marks*, 16 So.2d 649 (1895)). Thus, *Piper* stands for the proposition that the statutory term "court" does not reach each of the internal divisions that make up a district court, but rather embraces the district court as a whole. *See also Block*, 16 So.2d at 650 ("The civil district court, composed of five divisions, is still one court.")

Appellees further cite *State ex rel. Guste v. Green*, 94-1138 (La.App. 1 Cir. 6/23/95), 657 So.2d 610, wherein the first circuit was called upon to settle a constitutional challenge to the Louisiana Supreme Court's appointment to the Nineteenth Judicial District Court of a judge *pro tempore* to preside over cases involving insurance matters. There, the appellants argued that the supreme court's appointment of such an "insurance judge" stripped the district court's other judges of jurisdiction over insurance matters, thus violating separation of powers doctrine

4

by creating through extra-legislative means a specialized court of limited jurisdiction within the district court. The *Guste* court held that the referral of insurance cases arising within a district court to a particular division of that court falls short of the creation of a court of limited jurisdiction: "Nor does the order create a 'specialized' court wherein all insurance cases must be heard by Judge Landry . . . [T]he use of a system by the Nineteenth Judicial District to distribute civil matters which are before the court does not create a specialized court." *Id* at 622. In so holding, the first circuit brought *Guste* directly into line with *Piper*, affirming the proposition that, as with questions of statutory interpretation, questions of constitutional interpretation are resolved properly by construing the term "court" to mean the district court, rather than its internal divisions.

Applying the wisdom of these cases to the case at bar, this court finds no basis to rule that the lower court erred in holding that La.R.S. 13:587 violated neither of the relevant provisions of the Louisiana Constitution. Here, as in both *Piper* and *Guste*, the determinative question is whether the allocation of certain types of civil cases to less than all of the divisions within a district court is sufficient to create a court of "limited" or "specialized" jurisdiction. The lower court saw fit to answer this question in the negative, and in light of relevant case law, this court agrees. In enacting Local Rule 23 pursuant to La.R.S. 13:587, the District Court did not create a court of limited jurisdiction, in that no court was created at all. The District Court was already in place, and it remains in place. Further, as in *Guste*, neither does the instant case involve the deprivation of any sitting judge's authority to hear all civil matters, including family and juvenile cases, under art. 5, § 16 of the Louisiana Constitution. Local Rule 23 merely authorizes the allotment of cases to particular

5

divisions within the District Court, which does not violate any provision of the Louisiana Constitution. Accordingly, we reject the validity of this assignment of error.

**ASSIGNMENT OF ERROR #2:**

Judge Carter next argues that the lower court committed legal error in finding that La.R.S. 13:587 does not restrict unconstitutionally Judge Carter's exercise of general jurisdiction. More particularly, Judge Carter argues that in failing to provide for the random allotment of family and juvenile pleadings amongst the divisions of the District Court, La.R.S. 13:587 and Local Rule 23 unconstitutionally impede his ability, as a district court judge, to exercise general jurisdiction over matters before the court. We find this argument without merit.

"The Louisiana Legislature, elected by the state's citizenry, may enact any legislation *that the state constitution does not expressly prohibit*." *Strata v. Williams*, 94-1150, p. 4 (La.App. 4 Cir. 11/30/94), 646 So.2d 522, 525, *writs granted and aff'd by*, 94-3133, 94-3160 (La. 4/28/95), 653 So.2d 549. "The opponents who are challenging the constitutionality of a statute bear the burden of proving clearly that a particular statute is barred by a provision of the state constitution." *In re Am. Waste & Petroleum Control Co.*, 588 So.2d 367, 373 (La.1991) (citing *Moore v. Roemer*, 567 So.2d 75, 78 (La.1990); *Bd. of Dir. of the Louisiana Recovery Dist. v. All Taxpayers, Prop. Owners, and Citizens of the State of Louisiana*, 529 So.2d 384, 387 (La.1988); *State v. Griffin*, 495 So.2d 1306, 1303 (La.1986)). "Specifically, the party *must rely upon a constitutional provision which restricts the power of the legislature to enact the particular legislation* and must establish that the legislation is barred by such provision." *Strata*, 646 So.2d at 525 (citing *In re Am. Waste*, 588

So.2d. At 373; *State Bond Comm'n of the State of Louisiana v. All Taxpayers, Prop. Owners, and Citizens of the State of Louisiana*, 525 So.2d 521 (La.1988)). "[T]he opponents must clearly and convincingly prove that the Legislature's action is in contravention of a specific provision of the constitution." *In re Am. Waste*, 588 So.2d at 373 (citing *Bd. of Dir.*, 529 So.2d at 388; *Ancor v. Beldon Concrete Prod., Inc.*, 256 So.2d 122, 125 (1971)).

In the instant case, Judge Carter points to Article 5, § 16 as the constitutional provision of which La.R.S. 13:587 stands in contravention: "[A] district court shall have original jurisdiction of all civil and criminal matters . . . ." La.Const. art. 5, § 16(A)(1). Specifically, Judge Carter contends that the constitution's grant of original jurisdiction to the district courts precludes the legislature from enacting a statute, such as La.R.S. 13:587, which restricts a district court judge's exercise of that jurisdiction. As discussed above, however, *Piper* and *Guste* instruct that the applicability of such a constitutional grant of jurisdiction to a "district court" must stop at the level of the court, as a whole, rather than extending to the smaller segments of that court's internal structure, including its judges. Further, as Judge Carter discusses extensively in his trial memorandum, the 1973 convention floor debates reveal the overriding intent of the constitutional framers in drafting Article 5 to be entrusting the legislature with paramount authority in exerting control over the future development of the Louisiana judiciary,[1] with specific reference made to

---

[1]Senator Samuel Nunez, Jr. proposed, on August 17, 1973, an amendment to the Judiciary Committee's constitutional draft Section 15(A), in which he sought to add a local referendum requirement to the existing language of the draft, which gave the legislature the exclusive power to abolish or merge courts of limited or specialized jurisdiction. In voting down the Nunez amendment by a count of 40 votes to 66, several drafters expressed their intent to imbue the legislature with overarching control over matters of jurisdiction, particularly at the sub-district court level. Of some note were comments made by several delegates to the constitutional convention. Delegate Burson argued against the amendment: "[I]f you do adopt this amendment, you will be taking away from the legislature a significant power which it has not at the present

family and juvenile matters.[2]  Accordingly, with respect to Judge Carter's exercise of original jurisdiction, La.Const. art. 5, § 16 cannot serve as the requisite constitutional provision restricting the power of the legislature to enact La.R.S. 13:587.  Not only does Judge Carter not possess, in his capacity as a district court judge, the very constitutional rights he now claims have been violated, but the intent of the framers in drafting Article 5 actually places La.R.S. 13:587 squarely within the purview of the legislature.  Whatever the restrictions imposed by La.R.S. 13:587 and Local Rule 23 on Judge Carter's exercise of jurisdiction, they are not unconstitutional in nature.

Nevertheless, Judge Carter asserts that La.R.S. 13:587 stands in direct conflict with the express statutory requirement for random allotment of filings in district court, as embodied by La.Code Civ.P. art. 253.1: "All pleadings filed shall be randomly assigned to a particular section or division of the court . . . ."  Buttressing the plain language of La.Code Civ.P. art. 253.1, Judge Carter further cites *State v. Sprint Communications Co., L.P.*, 96-3094 (La. 9/9/97), 699 So.2d 1058, in support of his argument.  There, in holding that the Eighteenth Judicial District Court's system of transferring cases to other divisions of the same court on a non-random basis was improper and violative of La.Code Civ.P. art. 253.1, the supreme court proclaimed:

No single judge sitting in a district court has the right or prerogative to

time and ought to have to run the business of the state."  32nd Day Proceedings–Aug. 17, 1973, p. 777.  Similarly, Delegate Abraham stated in opposition to the Nunez Amendment: "If we're ever going to get some order to this court system, we're going to have to give the legislature the authority and flexibility to set the thing up as it should be . . . . *Id.* at 780.  Delegate Stoval echoed these sentiments, as well: "It seems to me that there is something very basic and fundamental here that we need to consider.  It is the question of whether or not we are going to trust the wisdom and integrity of the legislature of our state."  *Id.*

[2]Constitutional draft Section 18, as amended on August 28, 1973, reads: "The juvenile and family courts shall have such jurisdiction as the legislature shall provide by law."  37th Day Proceedings–Aug. 28, 1973, p. 983.

8

> try class action suits, maritime cases, medical malpractice claims, or any other particular type of litigation to the exclusion of other judges on the same court to whom the cases are randomly assigned . . . .
>
> . . . .
>
> . . . Transfers that circumvent the random allotment process to funnel particular types of cases to one judge are . . . inappropriate and impermissible.

*Id.* at 1063 (footnotes omitted). In effect, Judge Carter contends that La.R.S. 13:587 and Local Rule 23 are similarly inappropriate and impermissible, in that they conflict with La.Code Civ.P. art. 253.1 by allotting the family and juvenile cases filed in the District Court on a non-random basis. We disagree.

Judge Carter places great reliance on the persuasive authority of *Sprint*, yet the issue presented by that case is actually quite different from the question placed before us today. Whereas *Sprint* involved a conflict between La.Code Civ.P. art. 253.1 and a non-random allotment policy that was autonomously implemented by a district court, the case at bar concerns a conflict between La.Code Civ.P. art. 253.1 and a non-random allotment procedure authorized by legislative statute, La.R.S. 13:587. "Where a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. "Laws on the same subject matter must be interpreted in reference to each other." La.Civ.Code art. 13. "Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions." *Bunch v. Town of St. Francisville*,

9

446 So.2d 1357, 1360 (La.App. 1 Cir. 1984). "In instances of a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *Horil v. Scheinhorn*, 95-967, p. 3 (La. 11/27/95), 663 So.2d 697, 699.

Here, the statute in question clearly and unambiguously sanctions the non-random allotment of juvenile and family pleadings to certain divisions within the District Court:

> The judges of the Fourteenth District Court may by rule adopted by a majority vote of the judges sitting en banc, designate and assign to one or more divisions of the court any or all types of juvenile matters of which the court has jurisdiction and any or all types of domestic relations matters of which the court has jurisdiction.

La.R.S. 13:587(A). At the same time, it is equally clear that La.Code Civ.P. art. 253.1 calls for all pleadings to be allotted randomly. In such cases, our jurisprudence directs us to attempt, wherever possible, to harmonize and reconcile the statute at issue with other statutes that speak to the same subject matter, with the added directive in cases of conflict to construe the more specific of the two statutes as an exception to its more general counterpart. In the instant case, La.R.S. 13:587 is the more specific of the two statutes. Whereas La.Code Civ.P. art. 253.1 speaks generally of "all pleadings" filed in "the court," La.R.S. 13:587 applies specifically to "juvenile . . . [and] domestic relations matters" brought before "the Fourteenth Judicial District Court." Thus, in accordance with general rules of statutory interpretation, this court holds that La.R.S. 13:587' s non-random allotment procedures for family and juvenile pleadings before the Fourteenth Judicial District Court must prevail as an exception to the prohibitions against non-random allotment contained in

10

La.Code Civ.P. art. 253.1, as the former is the more specific of two statutes that touch upon the same subject matter. Accordingly, we find this assignment of error to be without merit.

**ASSIGNMENT OF ERROR #3:**

Finally, Judge Carter asserts that the lower court committed legal error in finding that La.R.S. 13:587 does not violate the art. 3, § 12(A) prohibition against local and special laws. In particular, Judge Carter argues that La.R.S. 13:587 is a special law. We find this assertion without merit.

Louisiana Constitution Article 3, § 12(A) provides: "Except as otherwise provided in this constitution, the legislature shall not pass a local or special law: . . . [c]oncerning any civil or criminal actions, including . . . regulating the practice or jurisdiction of any court." "[A] statute is special if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the class. In essence, a special law is one directed to secure some private advantage or advancement for the benefit of private persons." *Teachers' Ret. Sys. of Louisiana v. Vial*, 317 So.2d 179, 183 (La.1975). The supreme court delved further into the rationale behind the constitutional prohibition in *Polk v. Edwards*, 626 So.2d 1128, 1135 (La.1993) (citations omitted):

> This Court has long recognized that the constitutional prohibition on designated types of local or special laws was not intended to restrict the use of legislative power to further the state's interest. Rather, the prohibition was intended to prevent abuse of legislative power on behalf of special interests and to prohibit the exemption of an individual or private corporation from the operation of a general law.

Viewing the facts of the case at bar through the lens of constitutional and jurisprudential authority, this court finds no justification for invalidating La.R.S.

11

13:587 as a special law. Judge Carter contends that the "class" affected unequally by the statute is that comprised of the judicial districts of the state, yet La.R.S. 13:587 does not speak to the judicial districts of the state as a whole, but instead constrains its scope to the Fourteenth Judicial District Court. As such, the circumstances of the instant case reflect those of *State v. Dalon*, 35 La.Ann. 1141 (La.1883), the relevance of which has not been diminished in its more than a century of existence. There, in upholding the validity of a statute organizing the criminal district court for Orleans Parish, the supreme court held: "The argument that a law which relates solely to the machinery of a court of justice having jurisdiction over the territory of one parish only, is a local or special law, because it does not operate throughout the State and all the parishes thereof, is perfectly preposterous . . . ." *Id.* at 1142. The only classification implicated by La.R.S. 13:587 is that of the judges of the District Court, and the statute affects the members of that class equally: "The judges of the Fourteenth Judicial District Court may . . . ." Further, in attempting to square our application of La.Const. art. 3, § 12(A) with the intent of that provision, this court finds the instant case devoid of any "private corporation" or "special interest" that stands to gain an advantage from the enactment of La.R.S. 13:587. On the contrary, the Fourteenth Judicial District Court, as a subdivision of the state's judicial branch, is a public entity, and its efficient administration of juvenile and family matters stands as an interest of decidedly general applicability. Thus, this court finds this assignment of error to be without merit.

Notably, although Judge Carter does not press the issue now, in constraining the scope of La.R.S. 13:587 to a single judicial district, neither has the legislature enacted a constitutionally impermissible local law: "[A] law whose application and

immediate effect is restricted to a particular locality is not considered local where persons throughout the state are affected by it or it operates on a subject in which the people at large are interested." *Kimball v. Allstate Ins. Co.*, 97-2885, 97-2956, p. 4 (La. 4/14/98), 712 So.2d 46, 51.  As Judge Carter concedes in his original brief, La.R.S. 13:587 is not local law, in that it applies equally to all persons who are litigants or parties to a proceeding before the Fourteenth Judicial District Court. Thus, there is no basis under La.Const. art. 3, § 12(A) to invalidate La.R.S. 13:587 as unconstitutional.

**CONCLUSION:**

_____For the reasons set forth above, the judgment of the lower court is affirmed. All costs to be taxed to the appellant.

**AFFIRMED.**

HONORABLE WILFORD D. CARTER

VERSUS

H. LYNN JONES, II, CLERK OF COURT, ET AL.


**PICKETT, Judge, concurring in the judgment.**

I agree with the ultimate conclusion reached by Judge Saunders that Judge Carter's suit lacks merit. However, I would find that Judge Carter lacks standing to raise the issue of the effect La.R.S. 13:587 has on random allotment as required by La.Code Civ.P. art. 253.1, thus I would recognize, *sua sponte*, an exception of no right of action. *See* La.Code Civ.P art 927(B). Therefore, I must concur in the judgment.

As discussed in the opinion, the court, rather than an individual judge of the court, exercises the jurisdiction conferred by the state constitution. *See Piper*, 288 So.2d 626, *and Guste*, 657 So.2d 610. I agree with the opinion, then, that La.R.S. 13:587 does not unconstitutionally infringe on Judge Carter's rights, as he lacks those rights in the first instance. For the same reason, I would find that Judge Carter cannot assert a claim that La.R.S. 13:587 and Local Rule 23 improperly infringes on the random allotment procedures required by La.Code Civ.P. art. 253.1. I would, therefore, reserve judgment on the issue of whether La.R.S. 13:587 contains a valid exception to the prohibition against non-random allotment contained in La.Code

1

Civ.P. art. 253.1 until it is properly presented to this court by a party with a valid right of action.

In all other respects, I join the opinion of Judge Saunders.

HONORABLE WILFORD D. CARTER

VERSUS

H. LYNN JONES, II, CLERK OF COURT, ET AL.

**GENOVESE, J., dissents and assigns the following reasons.**

The majority affirms the trial court in upholding the constitutionality of La.R.S. 13:587. I disagree. The establishment of divisions (such as Divisions C and I) within the Fourteenth Judicial District Court to hear juvenile and domestic relations matters is a permissive delegation of legislative authority pursuant to La.Const. art. 5, § 15(A). However, a serious constitutional question is presented when a majority of the judges, not the people who elect the judges to these specified divisions, decides which judges are to hear these cases. When a majority of the judges make such a designation, that is an exercise of judicial authority. Yet, our state constitution only grants that authority to the legislature. Technically, these specified divisions could be changed at will, pursuant to court rule, at the whim of a majority of the judges at any judges' meeting of the Fourteenth Judicial District Court. Not only Judge Carter, but each and every judge of the Fourteenth Judicial District Court, and the people whose cases are in those respective courts, are affected by a simple majority vote of the judges of the Fourteenth Judicial District Court pursuant to court rule enacted at any duly called judges' meeting. It is the people who have a constitutional right to elect those persons they deem fit and proper to these special divisions of court to hear their respective cases, not the then existing majority of the judges of the Fourteenth

1

Judicial District Court pursuant to court rule at any judges' meeting.

For these reasons, I find that La.R.S. 13:587 is an unconstitutional grant and delegation of legislative authority to the judiciary in violation of the separation of powers doctrine set forth in our state constitution as interpreted by our supreme court. I respectfully dissent from the majority and would reverse the trial court judgment in this case.